KIRK T. MANHARDT
RODNEY A. MORRIS
LOUISA A. SOULARD
LYDIA J. JINES
U.S. Department of Justice, Civil Division
PO Box 875, Ben Franklin Station
Washington, District of Columbia 20044
Telephone: (202) 514-9038
Facsimile: (202) 514-9163
E-mail: louisa.soulard@usdoj.gov

*Attorneys for the United States*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>NORTH COUNTRY HEALTHCARE, INC.,<br><br>Debtor. | Case No. 3:25-bk-12293-DPC<br><br>Chapter 11<br><br>**UNITED STATES' OBJECTION TO DEBTOR'S MOTION TO APPROVE SALE OF PERSOAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**<br><br><u>Hearing on Sale Motion</u><br>DATE: January 15, 2026<br>TIME: 3:00 p.m.<br>PLACE: 203 N. First Avenue<br>   6th Floor, Courtroom 603<br>   Phoenix, AZ |

The United States of America (the "<u>United States</u>"), on behalf of the U.S. Department of Health and Human Services ("<u>HHS</u>") and its agencies, the Centers for Medicare & Medicaid Services ("<u>CMS</u>") and the Health Resources and Services Administration ("<u>HRSA</u>"), objects to the *Motion to Approve Sale of Personal Property Free and Clear of Liens, Claims, Encumbrances, and Interests* (the "<u>Sale Motion</u>") [Docket No. 14], filed by North Country HealthCare, Inc., as Debtor and Debtor-in-Possession (the "<u>Debtor</u>").[1] In support of this objection, the United States avers as follows:

---

[1] The United States reserves the right to supplement this objection following further review of implicated governmental interests.

# INTRODUCTION

The Sale Motion appears to be limited to the sale of the personal property listed in the Sale Motion's Exhibit A. But without knowing whether property listed in Exhibit A was procured using HSRA Grant Funds or whether the unfiled asset purchase agreement attempts to improperly transfer the HRSA grants or the Medicare FQHC Agreements, the United States objects to the Sale Motion.

# BACKGROUND

On December 19, 2025 (the "Petition Date"), Debtor filed a voluntary petition for relief under Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") [Docket No. 1]. Debtor, a federally qualified community healthcare center ("FQHC"), operates health care clinics in 11 communities throughout northern Arizona. *See Declaration of Anne Newland in Support of First Day Motion* ("Newland Declaration") [Docket No. 16] at ¶ 2.

Prior to the Petition Date, HRSA awarded several grants to the Debtor (the "HRSA Grants") to further its policy to provide equitable health care to people who are geographically isolated and economically or medically vulnerable. The Debtor identifies five HRSA grants as executory contracts in Schedule G to its petition. [Docket No. 1 at 90]. The Debtor also holds Medicare FQHC Agreements with the Secretary of HHS to provide FQHC services for Medicare beneficiaries[2] and, according to the Debtor, owes Medicare $1.2MM for overpayments. *See* Sale Motion at ¶ 9; Newland Declaration at ¶ 10.

On the Petition Date, the Debtor filed the Sale Motion, seeking to sell "certain assets" "free and clear of all claims, liens, adverse interests, and encumbrances" to El Rio Health ("Buyer"), pursuant to an as yet to be filed asset purchase agreement (the "APA"). While Exhibit A to the Motion lists the "personal property" to be sold to the Buyer that does not include the HRSA grants or the Medicare FQHC Agreements, there is no indication whether the items in Exhibit A were procured by HSRA Grant Funds. Also, Exhibit

---

[2] The statutory and regulatory provisions governing the Medicare system are located at 42 U.S.C. § 1395, *et seq*. and 42 C.F.R. Chapter IV (collectively, the "Medicare Law").

B, the Letter of Intent, defines the "Acquired Assets" as including "but not limited to furniture, fixtures, equipment, supplies, and other assets as determined during the due diligence period."

## ARGUMENT

The United States objects to the Sale Motion to the extent the Debtor seeks to transfer: (1) funds from the HRSA Grants ("HSRA Grant Funds") and assets acquired with those funds, which are not property of the estate; (2) the Debtor's Medicare Agreements, outside the CHOW process or free and clear of any liability; and (3) HRSA Grants, which are not executory contracts and not property of the estate.

### I. Debtor May Only Sell Property of the Estate

The Debtor may not sell assets that, in fact, are not property of the estate. The Ninth Circuit Bankruptcy Appellate Panel noted that "a bankruptcy court may not allow the sale of property as property of the estate without first determining whether the debtor in fact owned the property." *Warnick v. Yassian (In re Rodeo Canon Dev. Corp.)*, 362 F.3d 603 (9th Cir. 2004), *opinion withdrawn and superseded*, 126 F. App'x 353 (9th Cir. 2005) (internal quotations omitted). The United States contends that the HSRA Grant Funds and any personal property purchased with HSRA Grant Funds are not property of the estate. To the extent the Debtor is requesting authority to sell these assets, the Court must first determine whether such assets are property of the estate.

The grant funds at issue in this case squarely correspond with other grant funds that courts exclude from the definition of property of the estate. For example, in *In re Joliet-Will County Community Action Agency*, 847 F.2d 430 (7th Cir. 1988) (hereinafter, "*Joliet-Will*"), the Seventh Circuit held that unspent federal grant funds were assets of the United States, not the bankruptcy estate. Before filing for bankruptcy, Joliet-Will, a non-profit, received a federal grant for a foster grandparents program. The court determined that the grant imposed "minute controls" on the use of federal grant funds, such that the grant recipient had "very little discretion." *Id.* at 432. The court specifically noted that the grant designated a

budget for chargeable costs and amounts that could be charged, and it prohibited the grant recipient from switching funds between items. *Id.* The court further explained that grant funds were appropriated by Congress under statutes that did not authorize grant recipients to use appropriated funds to pay creditors other than for costs authorized by the grants and applicable regulations. *Id*. (*citing* 7 C.F.R. § 3015). The Third Circuit, adopting the holding in *Joliet-Will*, held in *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 243–46 (3d Cir. 2001) that the extensive supervisory controls on grant funds removed this kind of funding from assets of the estate. And District and bankruptcy courts have consistently applied *Joliet-Will*'s analysis to conclude that federal grant funds and grant-funded property are excluded from a debtor's estate.

It is unclear whether the Debtor intends to "sell" either the outstanding amounts remaining on the federal grants, if any, or the tangible property purchased with federal grant money, neither of which are property of the estate. As noted above, the Debtor's Schedules list five HRSA grants on Schedule G as executory contracts [Docket No. 1 at 90]. At least some of the HSRA Grant Funds have yet to be distributed and are on "advance drawdown restriction," which means that before any available funds are transferred to the Debtor's account, the Debtor must submit a request to HRSA detailing the amount needed and how the funds will be used. Only if HRSA approves the request are the funds released to the Debtor. The Debtor must also provide an annual Federal Financial Report regarding use of HRSA funds. As such, the HSRA Grant Funds are subject to the sort of minute controls that remove the grants from the ambit of estate property. *See Joliet-Will,* 847 F.2d at 432.

To the extent HSRA Grant Funds have not yet been distributed, the federal government owns the funds, and the Debtor may not sell them in a section 363 sale. *Buchanan v. Alexander*, 45 U.S. 20, 20–21, 11 L. Ed. 857 (1846) ("Until paid over by the agent of the government to the person entitled to it, the fund cannot, in any legal sense, be considered a part of his effects."). Further, the Debtor may not sell the personal property purchased with HRSA funds. The federal government has an interest in the personal

property purchased with HRSA funds. *See Joliet-Will*, 847 F.2d at 433.

If the Debtor seeks to transfer the HRSA grants, the transfer must be approved by HRSA. HRSA conducts a "Successor-in-Interest" ("SII") evaluation to determine whether a successor entity is eligible to receive the Health Center Program grant funding that was awarded to the original health center. If HRSA approves the SII, the rights to, and obligations under, a Health Center Program award will be acquired by the new entity. Thus, HSRA Grant Funds may not be "sold" or transferred as the Sale Motion may suggest.

## II. Medicare FQHC Agreements Cannot Be Sold Free and Clear of Any Liabilities.

To the extent the Debtor seeks to transfer the Medicare FQHC Agreements without undergoing CMS's Change in Ownership process (the "CHOW process") or free and clear of Medicare statutory and regulatory requirements, the Court should deny the Motion.

The Debtor cannot sell the Medicare Agreements because Medicare Law bars its sale. Non-bankruptcy law defines the extent of a debtor's rights in property, and the Bankruptcy Code cannot expand such rights. *See, e.g.*, *In re Airadigm Commc'ns, Inc.*, 519 F.3d 640, 651 (7th Cir. 2008) ("[Where] the property itself—the license—is a creature of federal law[,]. . . federal law also defines the . . . interest in that license."); *United States v. Consumer Health Servs. of Am., Inc.*, 108 F.3d 390, 394-95 (D.C. Cir. 1997) (finding that the Bankruptcy Code could not modify an explicit statutory scheme defining liability for services under Medicare); *In re FCX, Inc.*, 853 F.2d 1149, 1153 (4th Cir. 1988) ("[Section] 363(b)(1) permits the trustee to 'use, sell, or lease' property of the estate but evinces no intent to enlarge the trustee's rights to take such actions beyond the debtor's pre-bankruptcy rights."); *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir. 1987) (finding that section 363 is an "enabling statute . . . that give[s] the trustee the authority to sell or dispose of property if the debtor would have had the same right under state law.").

Thus, if the law that creates the property interest also restricts the transfer of that interest, a debtor cannot disregard non-bankruptcy law and transfer the interest in violation of such restrictions. *See, e.g., In*

*re Schauer*, 835 F.2d at 1225 (refusing to permit sale of patronage margin certificates absent statutorily required consent); *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986) (holding that the debtor's right to transfer a liquor license is subject to California's right receive state tax payments under applicable state law); *In re Cosner*, 3 B.R. 445, 448 (Bankr. D. Or. 1980) (concluding that, under the Bankruptcy Act of 1898, as amended, the capital reserve account of a debtor-patron of a farm cooperative was subject to transfer restrictions).

Here, Medicare Law, the applicable non-bankruptcy law, creates and defines any "interest" the Debtor has in the Medicare Agreements. Medicare Law explicitly prohibits sale of Medicare Agreements, *see* 42 C.F.R. § 424.550(a) ("[A] provider or supplier is prohibited from selling its Medicare billing number or privileges to any individual or entity, or allowing another individual or entity to use its Medicare billing number"), and permits their transfer only through the CHOW process.[3]

The highly reticulated CHOW process alleviates the need for the new owner to complete the intricate procedures to qualify as a new provider, but nevertheless requires the proposed transferee to undergo an application process and to agree, among other things, to accept the outstanding obligations in the agreement, including provisions for over and under adjustment of payments, and the previous provider's compliance history. *See, e.g.*, 42 C.F.R. § 2444; Medicare Enrollment Application at 2, available at https://www.cms.gov/medicare/cms-forms/cms-forms/downloads/cms855a.pdf; *see also Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100 (8th Cir. 2000); *United States v. Vernon Home Health, Inc.*, 21 F.3d 693, 696 (5th Cir. 1994); *Eagle Healthcare, Inc. v. Sebelius*, 969 F. Supp. 2d 38, 40 (D.D.C. 2013).[4]

Indeed, the United States' regulatory interest in administering the Medicare program for the benefit of Medicare patients and taxpayers does not constitute an "interest in property" that can be extinguished

---

[3] CMS subject Medicare Agreements with FQHC to the CHOW process. the Program Integrity Manual Chapter 10, Section 10.2.1.4.

under 11 U.S.C. § 363(f).  *See, e.g., Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 260 (3d Cir. 2000); *In re Braniff Airways, Inc.*, 700 F.2d 935, 942 (5th Cir. 1983) ("[A]ny transfer of a state or federal regulatory license or certificate [via section 363] is subject to the continuing jurisdiction and approval of the applicable agency."); *In re Wolverine Radio*, 930 F.2d 1132, 1146 (6th Cir. 1991) (finding that state assigned credit rating used to determine a chapter 11 debtor's payments to the state unemployment fund was not an interest in property that could be extinguished under 11 U.S.C. § 363(f)).  Accordingly, Debtor and the proposed Buyer cannot strip their statutory and regulatory obligations to HHS.

### III. The Sale Motion Violates Section 365.

The Sale Motion cannot be approved to the extent it would permit the Debtor to assume items that are not executory contracts and to assume contracts with the United States without its consent.

#### A. The Sale Motion Would Permit Debtor to Assume Items That Are Not Executory Contracts or Unexpired Leases

The United States disputes that any HRSA grant listed in Schedule G is an executory contract. Section 365 only permits the Debtor to assume executory contracts.  *See* 11 U.S.C. § 365(a).  Court approval of the alleged "assumption" of the HRSA grants could be interpreted as a finding by this Court (and precedent in other cases) that such regulatory documents are executory contracts or unexpired leases, subject to section 365's rejection and assumption provisions, which they are not.  The Sale Motion would allow the Debtor to later identify "which leases and executory contracts it intends to assume" Sale Motion at ¶ 15.  To protect the United States' rights, the Sale Motion should explicitly disclaim any authority to assume or assign any grants, grant funds, contracts, agreements, and Medicare agreements (collectively, the "Federal Interests") without compliance by the Debtors and Buyers will all terms of the Federal Interests and with all applicable non-bankruptcy law.

#### B. Executory Contracts and Unexpired Leases with the United States Cannot be Assumed Without Its Consent.

To the extent the Sale Motion would permit the Debtors to execute a sale that assumes executory contracts with the United States without its consent, the Sale Motion violates section 365.  Paragraph 15 of the Sale Motion provides that "the Buyer will determine which leases and executory contracts it

intends to assume and will work with [the] Debtor to facilitate the assumption process." The accompanying Letter of Intent provides that the Buyer is "positioned to assume Debtor's HRSA grants." Exhibit B.

The Debtor cannot assume a contract with the United States unless the United States consents. Section 365(c) prohibits the Debtor from assuming an executory contract where applicable non-bankruptcy law excuses the non-debtor counterparty from rendering performance to or accepting performance from an entity other than the Debtor unless the non-debtor counterparty consents. 11 U.S.C. § 365(c). For example, the Anti-Assignment Act excuses the United States from accepting performance of a contract from anyone other than the contracting party. The Anti-Assignment Act expressly provides:

> The party to whom the Federal Government gives a contract or order may not transfer the contract or order, or any interest in the contract or order, to another party. A purported transfer in violation of this subsection annuls the contract or order so far as the Federal Government is concerned, except that all rights of action for breach of contract are reserved to the Federal Government.

41 U.S.C. § 6305. Courts have recognized the Anti-Assignment Act as applicable law that triggers section 365(c) consent rights. *See, e.g., In re West Elecs.*, 852 F.2d 79, 83 (3d Cir. 1988). To the extent federal law requires the United Staes's consent to transfer a Federal Interest, unless the United States consents, this Court must prohibit the Debtor from assuming an assigning any executory contracts or leases with the United States.

## CONCLUSION

For the foregoing reasons, the Sale Motion should not be approved.

Dated:  January 12, 2026                                  Respectfully submitted,

/s/ Louisa A. Soulard
KIRK T. MANHARDT
RODNEY A. MORRIS
LOUISA A. SOULARD
LYDIA J. JINES
Civil Division
U. S. Department of Justice
P. O. Box 875, Ben Franklin Station

Washington, D.C. 20044-0875
(202) 514-9038
louisa.soulard@usdoj.gov

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January 2026 I caused copies of the foregoing document to be served by electronic mail on all parties on the Court's ECF system.

                                                     */s/ Louisa A. Soulard*
                                                     Louisa A. Soulard